O

# United States District Court
# Central District of California

| | |
|---|---|
| KIMBERLY COLVIG<br><br>　　　　　　　Plaintiff,<br>　　v.<br>MARIANNA INDUSTRIES, INC., ATEF HALAKA, and DOES 1-100, inclusive,<br><br>　　　　　　　Defendants. | Case No.: 2:15-CV-09070-ODW-GJS<br><br>**ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE [12]** |

## I.　INTRODUCTION

On September 28, 2015, Plaintiff Kimberly Colvig filed this action in the Los Angeles County Superior Court against Defendants Marianna Industries, Inc. ("Marianna") and Atef Halaka (collectively, "Defendants"). (Complaint ("Compl."), ECF No. 1, Ex. A.)  On November 20, 2015, Defendants removed this action to this Court.  (Def.'s Not. of Removal ("NOR"), ECF No. 1.)  Defendants now move to transfer the matter to the District of Nebraska.  (Def.'s Mot. to Transfer Venue ("Mot."), ECF No. 12.)  For the reasons stated herein, the Court **DENIES** this Motion to Transfer Venue. [1]

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

Colvig, a California resident, alleges that after she refused to sleep with a client, her employment with Marianna was wrongfully terminated. (Declaration of Kimberly Colvig ("Colvig Decl."), ECF No. 13-1, ¶ 2.) Marianna's headquarters and principal place of business are located in Omaha, Nebraska. (Declaration of Atef Halaka ("Halaka Decl."), ECF No. 12-1, ¶¶ 2–3.) Marianna is a supplier of professional beauty products for brands, salons, and beauty schools. Halaka is the CEO of Marianna, and a resident of Omaha, Nebraska. (*Id.* ¶ 4.)

This Motion to Transfer Venue stems from a wrongful termination and harassment action arising under the California Fair Employment and Housing Act (FEHA). (Compl. ¶¶ 42–108.) In her Complaint, Colvig alleges: (1) hostile work environment; (2) sex discrimination; (3) retaliation; (4) retaliation in violation of public policy; (5) wrongful termination; and (6) negligent hiring/retention. (*Id.*)

Colvig and Halaka were friends and former co-workers. In March 2015, while in California, Halaka asked Colvig if she would be interested in leaving her current employment to work for Marianna as a sales executive. (*Id.* ¶ 8.) On June 15, 2015, Colvig began working for Marianna as the Vice President of Contract Manufacturing Sales. (Colvig Decl., ECF No. 13-1, Ex. 1.) It was agreed that Colvig would work primarily from her home office in Windsor, California, and would take sales trips when needed. (Colvig Decl. ¶ 7; Halaka Decl. ¶ 9.)

Shortly thereafter, on June 22, 2015, Colvig flew out to Marianna's corporate headquarters in Omaha, Nebraska for orientation. (Compl. ¶ 14.) While there, Colvig alleges that she discovered Occupational Safety and Health Administration (OSHA) violations in a Marianna storage warehouse, and that she was treated with hostility by various executives. (*Id.* ¶¶ 19, 21.) Halaka, on the other hand, states that he received numerous complaints from employees stating that Colvig was boasting about being their boss and saying she would be the President of Marianna in a few weeks. (Halaka Decl. ¶ 11.)

In July 2015, Colvig, Halaka, and other Marianna employees traveled to Las Vegas, Nevada for a cosmetics industry convention called CosmoProf. (Compl. ¶ 30; Mot. 3.) On the first day of the event, Colvig and the Marianna team met with Al Dignon, the Vice President of the Supply Chain at Kenra, LLC ("Kenra"), a client of Marianna. (Compl. ¶ 33.) Halaka alleges that Colvig was highly unprofessional during two separate sales meetings at CosmoProf, and, due to that unprofessional conduct, Halaka was forced to have two stern talks with Colvig. (Mot. 3.) Colvig, on the other hand, alleges that on the second day of the event, Halaka approached her and told her that if she did not have sex with Dignon, Dignon would not increase the volume of the Kenra account. (Compl. ¶ 34.) Colvig further alleges that Halaka told her that her refusal would count against her and that she would be fired. (*Id.*) On July 17, 2015, upon returning home from CosmoProf, Colvig received a letter from Patty Kousgaard, the Director of Human Resources at Marianna, informing her that she had been fired. (Compl., Ex. 3.)

On September 28, 2015, Plaintiff filed this action in the Los Angeles County Superior Court. On November 20, 2015, Defendants removed this action to this Court. (ECF No. 1.) On March 15, 2016, Defendants filed this Motion to Transfer Venue to the United States District Court for the District of Nebraska. (Mot. 1.) The Motion is now before the Court for consideration.

### III. LEGAL STANDARD

Even where venue is proper in a particular district, a court has discretion to transfer a case "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A decision "to transfer requires an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Analysis under § 1404 is two-fold. First, it must be shown that subject matter jurisdiction, personal jurisdiction, and proper venue exist in the transferee court. *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal.

2009); *see also Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). [2]

Second, the court must weigh a multitude of factors to consider to determine whether transfer pursuant to § 1404(a) is appropriate, include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Jones*, 211 F.3d at 498–99.

## IV. DISCUSSION

As discussed below, the evidence demonstrates that it is not in the interest of justice and the convenience of the parties to transfer this case to the District of Nebraska. *See* 28 U.S.C. § 1404.

*1. Locus of the Purported Agreements and the Applicable Substantive Law*

Defendants contend that the District of Nebraska is the locus of the purported agreements because the Board of Directors of Marianna interviewed Colvig by telephone, drafted her offer letter, and sent it to her from Omaha, Nebraska. (Mot. 6.) Colvig contends that this factor weighs in her favor because the initial negotiations between Colvig and Halaka took place in California, and, even if the most pertinent agreements took place while Halaka was in Nebraska, Colvig was in California when the relevant agreements were finalized. (Opp'n 2, 3–4.) In addition, the members of the Board of Directors live outside of Nebraska, and the employment contract states that Colvig was to work in California. The Court finds Colvig's argument more

---

[2] All three clearly exist here. Subject matter jurisdiction exists due to the diversity of the parties and the amount in controversy exceeding $75,000. 28 U.S.C. § 1332. Colvig is subject to personal jurisdiction in Nebraska because she has sufficient minimum contacts with that forum, her claims arise from those contacts, and the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks omitted). Finally, venue is proper in the District of Nebraska because Defendants reside in Omaha, Nebraska, and for the reasons discussed herein. *See* 28 U.S.C. § 1400(a).

persuasive. Marianna's Board of Directors and Halaka knew that Colvig was residing in California during all relevant negotiations, and even agreed that she would work primarily from her home in Windsor, California. (Mot. 6; Opp'n 2.)

In addition, Colvig contends that the Court should deny transfer to the District of Nebraska because it would otherwise require application of California's Fair Housing and Equal Employment Act in an out-of-state court. (Opp'n 6.) While this is permitted as a matter of federal policy to protect a plaintiff's choice of law when a case is transferred under section 1404, a forum's familiarity with governing law is a private factor to be considered. *Van Dusen v. Barrack*, 376 U.S. 612, 633 (1964). As such, the public interest in trying Colvig's California claims within this state weighs against transfer to Nebraska.

*2. Plaintiff's Choice of Forum; Lack of Significant Case-Specific Contacts*

While great weight is typically given to a plaintiff's choice of forum, the degree of deference given to the "plaintiff's chosen venue is substantially reduced" where "the forum chosen lacks a significant connection to the activities alleged in the complaint." *Ezieme v. Ward Int'l Trading, Inc.*, 2009 U.S. Dist. LEXIS 81955, at *20 (C.D. Cal. Aug. 31, 2009); *Fabus Corp. v. Asiana Express Corp.*, 2001 U.S. Dist. LEXIS 2568, at *4 (N.D. Cal. Mar. 5, 2001).

Colvig argues that her choice of forum should be given great deference because she was hired in California, employed in California, her unemployment insurance after termination was in California, and she was allegedly wrongfully fired while residing in California. (Opp'n 7.) As such, Colvig argues that the present case has a strong connection with her choice of forum. Colvig's point is well taken.

However, Defendants state that Colvig's choice of forum should be given less deference because the *operative facts* of the Complaint occurred outside California. Defendants point out that: 1) Colvig allegedly experienced a hostile work environment in Nebraska and Nevada; 2) She was purportedly asked to engage in sexual intercourse with Dignon at the CosmoProf exhibition in Nevada; and 3) Halaka was

allegedly negligently hired and retained in Nebraska. (Compl., ¶¶ 15, 17–27, 30, 33–34, 37.) As such, Defendants assert that California does not have a substantial connection to the subject matter of this litigation. (Mot. 8.) The Court agrees; Colvig's claims for hostile work environment, sexual discrimination, retaliation, wrongful termination, and negligent hiring/retention all stem from events that occurred outside of California.

As such, the Court finds that Colvig's choice of forum is to be given deference, but slightly diminished, as the case-specific contacts took place in Nebraska and Nevada.

*3. Convenience of Parties and Witnesses*

With respect to factors six, seven, and eight, Defendants argue that it will be much less expensive to litigate this action in Nebraska because it is where the key facts, documents, and witnesses pertinent to Colvig's retaliation and harassment claims are located. However, this is not entirely true; Defendants' witnesses are spread throughout the Midwest. (Reply 4–5.) Specifically, Dignon resides in Indiana, Halaka resides in Nebraska, Kousgaard resides in Iowa, and all of the members of the Board reside in Florida or Virginia. (*Id.*) It is true, however, that all of the other physical and electronic evidence relating to Colvig's claims are located in Nebraska. (Mot. 1.)

Courts have noted "the ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations," but that the availability of non-party witnesses is still a highly relevant factor. *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009) (internal quotation omitted).

Colvig also notes that Marianna employs and controls the relevant non-party witnesses and can direct their attendance in California, whereas Colvig cannot control the availability of her witnesses in Nebraska because their attendance is not compulsory. (Opp'n 9.) In addition, Colvig contends that litigating this case in

Nebraska would cause a significant financial burden because the majority of her witnesses and the evidence relating to her claims are in California. (Opp'n 8.) Colvig's arguments are well taken.

While there is record and testimonial evidence of Colvig's causes of action in Nebraska, it would not serve the interests of justice, judicial efficiency, or convenience to transfer the action there when Defendants' key witnesses are spread throughout the Midwest and the operative facts are split between Nevada and Nebraska. In addition, because Marianna knowingly hired Colvig to work in California, Marianna could have expected that it could be called into there for any state law violations. Section 1404(a) is not a mechanism by which to transfer inconvenience from one party to another. *See Van Dusen*, 376 U.S. at 646 ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient"). Thus, this court will not require Colvig to bring her claims in a district so far removed from the geographic nexus of her employment when the kay facts are witnesses are sprinkled throughout different states.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIESS** Defendants' Motion to Transfer to the United States District Court for the District of Nebraska.

**IT IS SO ORDERED.**

July 12, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**